# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**JANE S. REYNOLDS,**

                                       **Case No. C-3-06-010**

                   **Plaintiff,**

**-vs-**

                                 **Judge Thomas M. Rose**

**RELIANCE STANDARD LIFE
INSURANCE COMPANY,**

                   **Defendant.**

_____

**ENTRY AND ORDER GRANTING RELIANCE'S MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD (Doc. #11);
OVERRULING MS. REYNOLDS' MOTION FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD (Doc. #12) AND TERMINATING THIS
CASE**

_____

      This is an ERISA claim for the recovery of life insurance benefits by Jane S. Reynolds

("Ms. Reynolds"), the widow and beneficiary of J. Richard Reynolds ("Mr. Reynolds"). Mr.

Reynolds is now deceased. The claim for benefits was denied and the denial affirmed by

Defendant Reliance Standard Life Insurance Company ("Reliance").

      Now before the Court are motions for judgment on the administrative record[1] and

memorandums in opposition filed by both parties. The Stipulated Administrative Record ("AR")

has also been filed. The motions for judgment on the administrative record are, therefore, ripe for

decision. A brief factual background will first be set forth followed by the standard of review

and an analysis of the motions.

_____

      [1]Reliance's motion is captioned as a motion for summary judgment but will be treated,
pursuant to *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998), as a motion for
judgment on the administrative record.

## FACTUAL BACKGROUND

Mr. Reynolds was employed by Weiss-Aug Co. ("Weiss") and was a participant in the company's employee benefit plan. He stopped working on November 7, 1997, at age 59, due to non-small cell lung cancer. (AR 160-61, 109, 164-74.) Mr. Reynolds subsequently became eligible for continued group life insurance coverage under the Waiver of Premium provision of the group life insurance policy No. GL 16843 (the "Policy") that was part of Weiss's employee benefit plan. (AR 160-61, 109, 164-74.)

<u>Relevant Policy Language</u>

The Waiver of Premium provision extends coverage under the Policy without payment of premiums in the event an insured suffers from a Total Disability. (AR 0018.) The Policy then limits the Waiver of Premiums as follows:

> The Amount of Insurance extended for an Insured will cease on the earliest of:
> (1) the date he/she can return to any Full-time, active work;
> (2) the date he/she refuses to be examined;
> (3) the date he/she fails to furnish the required proof of Total Disability;
> (4) the date he/she becomes age 70; or
> (5) the date he/she retires.

(Id.) In addition, the definition section of the Policy states:

> The date he/she retires: or "retirement" means the effective date of an Insured's:

> > (1) retirement pension benefits under any plan of a federal, state, county or municipal retirement system, if such pension benefits include any credit for employment with you;

> > (2) retirement pension benefits under any plan which you sponsor, or make or have made contributions; or

> > (3) retirement benefits under the United States Social Security Act of 1935, as amended, or under any similar plan or act.

(AR 0009).

<u>Relevant Events</u>

On January 20, 1999, Reliance approved Mr. Reynolds' claim for waiver of his life insurance premiums. (AR 109-10.) In the approval letter, Reliance indicated that premiums would be waived and the life insurance extended provided that Mr. Reynolds remains totally disabled in accordance with Policy provisions. (Id.) Reliance also indicated that the insurance being extended would terminate at age 70 or the date Mr. Reynolds retires, whichever occurs first. (Id.) This same letter was forwarded to a different individual at Weiss on January 26, 1999. (AR 106-07.) Both of these letters indicate that they were copied to Mr. Reynolds. (AR 106-07, 109-10.)

The next relevant correspondence is a letter dated March 7, 2002, from Reliance to Mr. Reynolds thanking him for completing the disability claim form. (AR 102.) Reliance told Mr. Reynolds that his life insurance would continue to be extended and premiums waived for another year while he remains totally disabled. (Id.) This letter also indicates that, "[t]he amount of life insurance being extended under waiver of premium will terminate the date you turn age 65, plus 2 months, 8/10/2003."[2] (Id.) Finally, Mr. Reynolds was told that he would be contacted "at this time next year" for completion of the annual disability claim form. (Id.)

Approximately one year later, in a letter dated April 21, 2003, Reliance thanked Mr. Reynolds for again completing a disability claim form. (AR 0098.) Reliance again told Mr. Reynolds that the life insurance was being extended and premiums waived. (Id.) This letter also indicates that, "[t]he amount of life insurance being extended under waiver of premium will

---

[2]Reliance now indicates that the waiver of premium actually terminated on August 1, 2003 instead of August 10, 2003, and that this clerical error is of no consequence.

terminate the date you turn age 70; the date you retire; or the date you are no longer totally disabled, whichever occurs first." (Id.) Finally, Mr. Reynolds was told that he would be contacted around July 1, 2003 for completion of the conversion application. (Id.)

On July 14, 2003, Reliance again wrote to Mr. Reynolds. (AR 0091-93.) In this letter, Reliance indicates that, during a recent review, it had learned that Mr. Reynolds turned 65 years of age on June 10, 2003. (Id.) Reliance then set forth the Policy language defining retirement highlighting the part of the definition regarding the receipt of Social Security Retirement benefits. (Id.) The letter from Reliance next informed Mr. Reynolds that, if he was receiving Social Security Disability benefits, they would end the month before he reached the normal protected retirement age and Social Security Retirement benefits would commence the first of the month in which he reached the normal projected retirement age. (Id.) Reliance concluded this section of the July 14, 2003 letter with the statements that, "Our records reflect that on June 10, 2003, you reached the normal retirement age under the Social Security Act and are now eligible for retirement benefits under the United States Social Security Act of 1935. Therefore, we are terminating your waiver of premium and extension of life insurance claim effective August 1, 2003, the effective date of your retirement." (Id.)

Reliance also indicated to Mr. Reynolds that he would "have 31 days from August 1, 2003 to convert the amount of life insurance terminated, $50,000.00, to an individual policy." (Id.) However, Mr. Reynolds did not exercise his right to convert the amount of life insurance. (AR 75.)

Mr. Reynolds died on March 25, 2005. (AR 69.) On June 1, 2005, Ms. Reynolds demanded payment on the Policy asserting that Mr. Reynolds did not receive the attempted

termination of the policy in July 2003 and that he had "converted and continued the policy coverage in 1998." (AR 0077-78.)

Reliance responded in a letter dated June 9, 2005, that the Policy was never converted and that Mr. Reynolds was informed on several occasions that the insurance would be terminated on the date he retired. (AR 0075-76.) Reliance also indicated that it had proof that Mr. Reynolds received either or both of the January 21 or January 26, 1999 letters. (Id.) The letters had Ms. Reynold's middle initial as "R." and Mr. Reynolds called Reliance on 4/23[3] to indicate that her middle initial was "S." (AR 103.)

On June 14, 2005, Ms. Reynolds wrote Reliance again stating that Mr. Reynolds did not receive any of the letters referenced in Reliance's previous letter. (AR 0073-74.) She also indicated that Mr. Reynolds believed that he was insured until age 70 and that this was a fair interpretation of the information provided by Reliance on January 20, 1999. (Id.)

On July 11, 2005, Ms. Reynolds submitted a formal claim for the proceeds of Mr. Reynolds' life insurance using the claim form provided by Reliance. (AR 65-67.) On August 2, 2005, Reliance denied Ms. Reynolds' claim for the life insurance proceeds on the basis that no life insurance coverage was in force as of August 1, 2003. (Id.) No life insurance was in force, according to Reliance, because Mr. Reynolds reached retirement age on August 10, 2003, and the amount of life insurance was terminated in accordance with Policy language. The life insurance was terminated on August 1, 2003, the effective date of Mr. Reynolds' retirement. (Id.) Reliance also indicated that Mr. Reynolds was notified of the termination via a letter dated July

---

[3]The memorandum of this telephone call does not include the year on which it was received.

14, 2003, and was offered the option to convert the amount of life insurance, an offer that he did not exercise. (Id.)

On August 12, 2005, Ms. Reynolds appealed Reliance's denial of coverage. (AR 0052-55.) In the appeal, she does not dispute that the Policy includes a definition of retirement as being eligible to receive Social Security Retirement benefits. (Id.) However, she argues that this was never the language used in correspondence to Mr. Reynolds from 1997 through 2003. (Id.)

On October 3, 2005, Reliance upheld its decision to deny Ms. Reynolds' claim based upon the terms of the Policy. (AR 43-47.) Reliance also indicates that it consistently used the address of 9567 Bridlewood Trail, Dayton, OH 45458, for Mr. Reynolds and that, on several occasions, Mr. Reynolds replied to Reliance's correspondence and/or requests. (Id.)

This lawsuit was commenced in the Court of Common Pleas of Montgomery County, Ohio on December 16, 2005, and was subsequently removed to this Court. (Doc. #1.) The basis for removal is federal question jurisdiction. Neither party disputes that this is an ERISA claim or that this Court has federal question jurisdiction to adjudicate this matter.

### STANDARD OF REVIEW

When an ERISA plan administrator's decision to deny benefits is brought before a court, the court engages in a de novo review of the decision unless the benefit plan gives the plan administrator discretionary authority to determine eligibility or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the plan administrator is given no discretionary authority by the plan, review by the court is de novo with respect to both the factual determinations as well as the legal conclusions of the plan administrator. *Id.* Where there is a clear grant of discretion, the court applies an arbitrary and capricious standard

of review to the administrator's decision to deny benefits. *Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994), *cert. denied*, 513 U.S. 1058. Finally, absent a procedural challenge to the administrator's decision, the court's review is limited to the administrative record of the benefit determination. *Wilkins*, 150 F.3d at 619.

In this case, the plan administrator is given no discretionary authority by the Policy. To this, both Parties agree. Therefore, this Court will review Reliance's factual determinations de novo.

A de novo review contemplates consideration of the proper interpretation of the plan and whether an employee is entitled to benefits pursuant to the plan. *Perry v. Simplicity Engineering, a Division of Lukens General Industries, Inc.*, 900 F.2d 963, 967 (6th Cir. 1990). When conducting the de novo review, the district court takes a "fresh look" at the administrative record without deference or any presumption of correctness to the insurer's decision. *Wilkins*, 150 F.3d at 618.

When taking the "fresh look," the district court is not required to hear and consider evidence which was not presented to the plan administrator in connection with a claim. *Perry*, 900 F.2d at 966. Further, policy provisions are interpreted according to their plain meaning. *Perez v. Aetna Life Insurance Company*, 150 F.3d 550, 556 (6th Cir. 1998), *cert. denied*, 531 U.S. 814 (2000). If the plain meaning is ambiguous, the policy terms are construed against the insurer. *Id.* n.7.

Also regarding the applicable law, Ms. Reynolds raises the issue of conflict of interest. She argues that Reliance had a conflict of interest that should be taken into account by this Court. However, a conflict of interest is relevant when a plan administrator's decision is

reviewed to determine if it was arbitrary and capricious. A conflict of interest is not relevant in a de novo review such as this one.

## ANALYSIS OF MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

The following are findings of fact and conclusions of law as determined by a de novo review of the AR, including the Policy. Mr. Reynolds was covered under the Policy pursuant to his employment by Weiss. When he became disabled in November 1997, Reliance waived payment of premiums and continued to provide life insurance coverage under the Waiver of Premium provision of the Policy.

The Policy provides that the life insurance would continue under the Waiver of Premium provision until the earliest of when Mr. Reynolds returns to full-time work, when he refuses to be examined, when he fails to furnish the required proof of Total Disability, when he becomes age 70 or when he retires. Retirement is defined by the Policy as the effective date of Mr. Reynolds' retirement pension benefits under any plan of a government retirement system if the pension benefits include any credit for employment with Weiss, the effective date of Mr. Reynolds' retirement pension benefits under any plan which Weiss sponsored or made contributions to, or the effective date of retirement benefits under the Social Security Act of 1935.

After becoming disabled, Mr. Reynolds began receiving Social Security Disability benefits. When he reached his social security retirement age of 65 plus 2 months, pursuant to Social Security rules, he began receiving Social Security Retirement benefits instead of Social Security Disability benefits.

When Mr. Reynolds began receiving Social Security Retirement benefits, the Policy's definition of retirement was satisfied and Reliance, in accordance with the Policy, terminated his life insurance.

The life insurance was terminated on August 1, 2003. Mr. Reynolds was given the option of converting the Policy in accordance with its terms and did not elect to do so.

Mr. Reynolds died on March 25, 2005. Ms. Reynolds had been named as beneficiary of Mr. Reynolds' life insurance. Upon his death, Ms. Reynolds, who had been named as Mr. Reynolds' beneficiary under the Policy, attempted to recover the amount of the life insurance. Reliance denied her claim based upon the Policy language.

Based upon a de novo review, Mr. Reynolds retired, as defined by the Policy when he began receiving Social Security Retirement benefits on August 1, 2003. Also, he did not elect to convert the Policy. Therefore, the Policy was not in effect upon his death on March 25, 2005.

Ms. Reynolds offers several arguments as to why she is entitled to the proceeds from Mr. Reynolds life insurance. Each will be addressed seriatim.

<u>Misleading and Ambiguous Communications</u>

Ms. Reynolds first argues that Reliance created reasonable expectations by its misleading and ambiguous communications to Mr. Reynolds that his beneficiary would be paid the policy proceeds. However, Ms. Reynolds has not identified any law that would entitle her to benefits based upon the reasonable expectations doctrine. *See Park-Ohio Industries v. Home Indemnity Co.*, 975 F.2d 1215, 1223 (6th Cir. 1992)(Ohio has rejected the reasonable expectations doctrine). Also, even if the reasonable expectations doctrine did apply, Ms. Reynolds has not identified any communications that are misleading and ambiguous.

The first communications identified by Ms. Reynolds are the duplicate January 20/26, 1999 letters from Reliance to Mr. Reynolds. In the letters, Reliance clearly informs Mr. Reynolds that the amount of life insurance "will terminate at age 70 or the date Mr. Reynolds retires, whichever occurs first." This is not ambiguous or misleading and is consistent with the Policy language.

The next communication identified by Ms. Reynolds is Reliance's letter of March 7, 2002. This letter indicates that the life insurance "will terminate the date you turn age 65, plus 2 months, 8/10/2003." By this time, Reliance had determined that Mr. Reynolds would begin receiving Social Security Retirement benefits when he reached age 65 plus 2 months. This is not ambiguous or misleading and is consistent with the Policy language.

The next communication identified by Ms. Reynolds is Reliance's letter of April 21, 2003. This letter indicates that the life insurance "will terminate the date you turn age 70; the date you retire; or the date you are no longer totally disabled, whichever occurs first." This is not ambiguous or misleading and is consistent with the Policy language.

The final communication identified by Ms. Reynolds is the letter from Reliance to Mr. Reynolds dated July 14, 2003. In this letter, Reliance sets forth the Policy definition of retirement and indicates that, if Mr. Reynolds is receiving Social Security Disability benefits, these benefits will cease the month before he reaches the normal projected retirement age. The letter also indicates that Mr. Reynolds' Social Security Retirement benefits will begin the first of the month he reaches the normal projected retirement age and the life insurance will cease on that date. Finally, this letter indicates that Reliance is terminating his life insurance effective

August 1, 2003, "the effective date of your retirement." This letter is not ambiguous nor is it misleading. The information provided to Mr. Reynolds is consistent with the Policy language.

None of these letters are ambiguous nor are they misleading. Further, all contain information that is consistent with Policy language and none contain information that is not consistent with Policy language. Finally, when read together, the letters plainly state that Mr. Reynolds' life insurance would terminate upon his Social Security retirement and they plainly state when that retirement would take place.

Regarding ambiguous language, Ms. Reynolds argues that ambiguities in policy language are construed against the insurer. However, the alleged ambiguities she identifies here are in letters and not in the policy language. In fact, Ms. Reynolds agrees that the Policy language is not ambiguous.

<u>Equitable Relief</u>

Ms. Reynolds next argues that she is entitled to equitable relief under ERISA Sections 502(a)(1) and (3). The equitable relief that she identifies is equitable estoppel which prevents a party from benefitting from its own misleading conduct. *See Sprague v. General Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998), *cert. denied*, 524 U.S. 923 (1998). However, Ms. Reynolds is not entitled to equitable relief and, if she were, she is not entitled to equitable estoppel.

ERISA provides a wide range of remedies for participants and beneficiaries of employee benefit plans. *Firestone*, 489 U.S. at 108. However, ERISA distinguishes between parties who may bring a claim and the type of relief available to them. *Helfrich v. PNC Bank, Kentucky, Inc.*, 267 F.3d 477, 481 (6th Cir. 2001), *cert. denied*, 535 U.S. 928 (2002).

Specific provisions for the civil enforcement of ERISA by certain specified parties are found in 29 U.S.C. §1132. Section 1132(a)(1)[4] provides that a civil action may be brought by a participant or beneficiary to recover benefits. Section 1132(a)(2)[5] provides that a civil action may be brought by a participant or beneficiary pursuant to the breach-of-fiduciary liability set forth in Section 1109. Finally, Section 1132(a)(3)[6] provides that a civil action may be brought by a participant or beneficiary to enjoin acts or practices that violate ERISA or to obtain other appropriate equitable relief.

Ms. Reynolds' claim for the proceeds to Mr. Reynolds' life insurance policy brought pursuant to section 1132(a)(1) has been addressed above and Ms. Reynolds has not brought a claim pursuant to section 1132(a)(2). Finally, section 1132(a)(3) provides equitable relief to plan beneficiaries who have no recourse to money damages. *Helfrich,* 267 F.3d at 481. *See also Black v. TIC Investment Corp.*, 900 F.2d 112, (6th Cir. 1990)(equitable estoppel claims are not available where the plan involved is a multiemployer plan).

Ms. Reynolds has recourse to money damages and has, in fact, sought money damages. She, therefore, is not entitled to equitable relief pursuant to section 1132(a)(3).

As for the equitable relief, Ms. Reynolds seeks to apply the doctrine of equitable estoppel. However, the principles of estoppel cannot be used to vary the terms of unambiguous plan documents. *Sprague,* 133 F.3d at 404. Estoppel can only be invoked when the plan

---

[4]Section 502(a)(1) is codified at 29 U.S.C. § 1132(a)(1).

[5]Section 502(a)(2) is codified at 29 U.S.C. § 1132(a)(2).

[6]Section 502(a(3) is codified at 29 U.S.C. § 1132(a)(3). Section 1132(a)(3) operates as a safety net offering appropriate equitable relief for injuries, such as breaches of fiduciary duties, that ERISA does not elsewhere adequately remedy. *Varity Corporation v. Howe*, 516 U.S. 489, 512 (1996).

documents are ambiguous. *Id.* In this case, there are no ambiguous plan documents. Therefore, Ms. Reynolds cannot apply the doctrine of equitable estoppel.

Further, even if the equitable estoppel remedy was available to her, Ms. Reynolds could not be successful. As determined above, she has not shown, based upon the contents of the AR, that Reliance misrepresented any facts.

<u>Receipt of July 14, 2003 Letter</u>

Ms. Reynolds' final argument is that Mr. Reynolds did not receive the letter sent to him by Reliance dated July 14, 2003. She argues that, despite complete searches, she was never able to find this letter and only became aware of it after she hired counsel and her counsel made inquiry of Reliance.

Federal courts applying Ohio law, such as this Court, use a common law rebuttable presumption, termed the "mailbox rule," with regard to mailings. The "mailbox rule" provides that, once a notice is mailed, it is presumed to be received in due course. *Simpson v. Jefferson Standard Life Insurance* Co., 465 F.2d 1320, 1322-23 (6th Cir. 1972); Weiss *v. Ferro Corp.*, 542 N.E.2d 340, 342 (Ohio 1989). This presumption may, however, be rebutted by evidence which shows that the addressee did not receive the mailing and that such failure was due to cause beyond the control of the addressee. *Id.*

In this case, mailing is evidenced by the copy of the letter in the AR. It is addressed to Mr. Reynolds.

Reliance argues that the AR shows that it consistently used the "Bridlewood Trail address, but the address is redacted from each of the letters referenced by Reliance. However, Ms. Reynolds does not dispute the address used.

The AR includes no letters to Mr. Reynolds that were returned as undeliverable. Also, the AR contains a letter from Reliance to Mr. Reynolds dated May 18, 1998, which was returned with comments from Mr. Reynolds.

Next, Ms. Reynolds argues that she was unable to find copies of this letter. However, the letter was not addressed to Ms. Reynolds and she does not identify evidence in the AR or present otherwise reliable evidence that Mr. Reynolds did not receive the letter.

Finally, Ms. Reynolds argues that the July 14 letter claims to enclose a Group Life Conversion Request form and that a copy of the form is not included in the AR along with the July 14 letter. While this may be evidence that the form may not have been mailed, it is not evidence that the July 14 letter was not mailed. It is also not evidence that Mr. Reynolds was not informed that he could covert the policy. The July 14 letter provides a toll-free telephone number to call for information regarding conversion. Finally, as agreed by Ms. Reynolds, conversion of the policy is no longer an issue.

There is evidence that the July 14, 2003 letter was mailed to Mr. Reynolds and there is no reliable evidence that he did not receive the letter. Applying the "mailbox rule," receipt of the July 14, 2003, letter by Mr. Reynolds is presumed.

### CONCLUSION

This Court has made a de novo review of Reliance's denial of life insurance benefits to Mr. Reynolds under the Policy and finds that Reliance's denial was consistent with the plain meaning of the Policy language. Further, Ms. Reynolds has not shown, from a legal or factual basis, that she is entitled to legal or equitable relief. Therefore, Reliance's Motion for Judgment On the Administrative Record is GRANTED and Ms. Reynolds' Motion for Judgment On the

Administrative Record is OVERRULED. The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

      **DONE** and **ORDERED** in Dayton, Ohio, this Eighteenth day of October, 2006.

s/Thomas M. Rose

_____

THOMAS M. ROSE<br>UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record